IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MAUDIEL DE JESÚ DAVILA DAVILA,<br><br>Petitioner,<br><br>vs.<br><br>PAMELA BONDI, Attorney General of the United States; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; TODD M. LYONS, Acting Director of Immigration and Customs Enforcement; DAVID EASTERWOOD, Acting Director, St. Paul Field Office Immigration and Customs Enforcement; and ERIC TOLLEFSON, Sheriff of Kandiyohi County.<br><br>Respondents. | **0:26-CV-01808-SHL-ECW**<br><br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART VERIFIED PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION.

Petitioner Maudiel de Jesú Davila Davila seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by U.S. Immigration and Customs Enforcement ("ICE") officials. For reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Petitioner's Verified Petition for Writ of Habeas Corpus (ECF 1).

## II.    FINDINGS OF FACT.

Petitioner is a citizen of Nicaragua and a resident of Minneapolis, Minnesota. (Id., ¶ 13.) Petitioner asserts that he has a valid work permit and is employed by a construction company, as well as a logistics company associated with Amazon. He attended university in his home country, where his coursework included the study of the English language. (Id., ¶ 14.)

Petitioner states that he entered the United States in December 2021 and applied for refugee status after encountering immigration officials near the border. (Id., ¶ 13, 14.) In their Response, Respondents assert that Petitioner was "presented himself at the border in December 2022 and …. was initially paroled in 2022, then applied for asylum status." (ECF 6, p. 1.) Documents submitted by Respondents indicate that he entered the United States in December 2022 and was enrolled in the Alternative to Detention ("ATD") program. (ECF 7, ¶ 1; ECF 7-1, p. 1.) In any event, it is clear that after his initial encounter with immigration officials at or near the border, Petitioner was released from detention. (ECF 1, ¶ 14; ECF 7, ¶ 1.) According to Respondents, Petitioner was

1

"terminated from the ATD program" on or about December 27, 2022. (ECF 7, ¶ 2.) Respondents do not, however, provide any information about the mechanism through which this occurred or why it happened.

On March 15, 2023, Respondents issued Petitioner a Form I-862, "Notice to Appear" ("NTA"), via mail to his last known address. (ECF 7, ¶ 3; ECF 7-1.) The NTA identifies Petitioner as "an alien present in the United States who has not been admitted or paroled" and charges him with removal pursuant to sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. (Id.) The NTA shows a hearing date of November 20, 2025, in Miami, Florida. (Id.) Neither side provides information about whether Petitioner appeared for this hearing: Petitioner does not mention it at all, while Respondents state, incongruently, that the initial hearing was set for November 202**7**. (ECF 7, ¶ 6.) Respondents further state, in any event, that his hearing has been rescheduled to March 13, 2026, in Bloomington, Minnesota. (Id.) Neither party indicates whether this hearing occurred. Respondents also state that the NTA issued to Petitioner in March 2023 required him to "schedule his appointment utilizing ICE appointment scheduler to capture biometrics, DNA sample collection and to receive an additional copy of charging documents and custody redetermination" but that "[s]ervice records do not indicate that [Petitioner] complied with reporting, fingerprinting, or DNA collection requirements as per case processing documentation." (ECF 7, ¶ 3.) Petitioner does not have a final order of removal. (ECF 1, ¶ 15.)

On January 2, 2026, Petitioner was arrested while driving in the Twin Cities. (Id., ¶ 17; ECF 7, ¶ 5.) He states that ICE agents did not present a warrant at the time of his arrest (ECF 1, ¶ 18), although Respondents rebut this by producing a Form 200, "Warrant for Arrest of Alien," dated the day of his arrest. (ECF 7-3.) (The Court presumes the misstated year—2025 instead of 2026—is a scrivener's error, particularly given the context and surrounding documents, including the Form I-213, "Record of Deportable/Inadmissible Alien" (ECF 7-2) which is correctly dated January 2, 2026.) Petitioner was taken to Kandiyohi County Jail, where he is now detained. (ECF 1, ¶ 19.)

Petitioner seeks a writ of habeas corpus ordering, among other things, that he be immediately released or, at least, granted an individualized bond hearing pursuant to 8 U.S.C. § 1226(a), not § 1225(b). (ECF 1, p. 18.) Respondents resist, arguing that Petitioner is properly classified as an "arriving alien" for purposes of 8 U.S.C. § 1225(b)(1) and is subject to mandatory detention without an opportunity for bond. (ECF 6.) In his reply, Petitioner does not acknowledge

2

the existence of the pre-existing NTA but argues that a pending asylum claim does not alter the analysis for mandatory detention and that Respondents failed to serve a valid warrant sufficient to justify his arrest under § 1226(a). (ECF 8.)

## III.   LEGAL STANDARDS.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The right of habeas corpus "extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941); *see also Bradin v. U.S. Prob. & Pretrial Servs*., No. 22-3032, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (collecting cases).

## IV.   LEGAL ANALYSIS.

### A.   Petitioner Is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b)(1).

Respondents argue that this case is on different legal footing than most of the habeas petitions federal courts have seen in recent months. There is, however, some overlap with those cases in the sense that one of the threshold disputes is whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) or whether detention might be discretionary under 8 U.S.C § 1226. What makes this case somewhat unique, however, is that Respondents argue that Petitioner is governed by § 1225(b)(1), not § 1225(b)(2) as they have argued in most other cases.

8 U.S.C. § 1225(b)(1) governs "an alien . . . who is arriving in the United States" and creates expedited proceedings for certain inadmissible individuals. "Section 1225(b)(1) applies to those initially determined inadmissible for fraud, misrepresentation, or lack of valid documentation, and authorizes expedited removal absent an asylum claim." *Eliseo A.A. v. Olson*, --- F. Supp. 3d ----, 2025 WL 2886729, at *2 (D. Minn. Oct. 8, 2025) (citing 8 U.S.C. §1225(b)(1)(A)(i)–(ii)). The Supreme Court has outlined in detail the basic procedures of § 1225(b)(1):

> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum . . . or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien

shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii).

*Jennings v. Rodriguez*, 583 U.S. 281, 287–88 (2018).

"As the statute and binding precedent make clear, aliens subject to expedited removal under 8 U.S.C. § 1225(b)(1) are also subject to mandatory detention throughout their removal proceedings, and are generally not entitled to release unless the Government chooses to parole them." *Cartagena Hueso v. Soto*, No. 26-1455, 2026 WL 539271, at *2 (D.N.J. Feb. 26, 2026); *Jennings*, 583 U.S. at 300 ("[T]he Attorney General may 'for urgent humanitarian reasons or significant public benefit' temporarily parole aliens detained under §§ 1225(b)(1) and (b)(2)." (citing 8 U.S.C. § 1182(d)(5)(A)). Once paroled, "even a noncitizen applicant for admission who falls into the category of those that 'shall' be detained may be permitted to cross into the United States and live in the country with relative freedom pending further immigration proceedings." *Qasemi v. Francis*, No. 25-CV-10029, 2025 WL 3654098, at *4 (S.D.N.Y. Dec. 17, 2025). Parole can be terminated either automatically or on notice to the individual. 8 C.F.R. § 212.5(e). Parole automatically ends either when the individual departs from the United States or "at the expiration of the time for which parole was authorized." *Id.* § 212.5(e)(1). Alternatively, parole may be terminated when, *inter alia*, "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." *Id.* § 212.5(e)(2). In such cases, parole is terminated with "written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." *Id.*

Both sides agree that Petitioner: (a) encountered immigration authorities at or near the United States-Mexico border when he entered the country more than three years ago; (b) lacked proper paperwork for entry into the United States; and (c) was released under conditions. Even if he arguably could have been treated as an "applicant for admission" subject to mandatory detention under § 1225(b), that is not how federal officials chose to proceed. Instead, they released Petitioner. The fact that Petitioner was released shows that immigration officials have not regarded him as someone who is subject to mandatory detention under 8 U.S.C. § 1225(b). *See, e.g.*, *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218–22 (D. Mass. 2025) (holding that petitioner was not subject to mandatory detention under § 1225(b) because immigration officials chose to release her into the country following an encounter at the border). Indeed, he apparently even has a work permit. *See Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *12 (E.D.N.Y. Oct. 6, 2025) ("If his detention is and has always been 'mandatory' under § 1225(2)(A), as Respondents now

4

claim, it is hard to see how the United States government would, or even could, have granted him permission to seek employment outside the confines of an ICE detention facility as recently as June 2025.").

Petitioner's NTA similarly described him as "an alien present in the United States" and not an "arriving alien." (ECF 7-1, p. 1.) "This is consistent with him being governed by § 1226, not § 1225." *Helbrum v. Williams Olson,* 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *4 (S.D. Iowa Sept. 30, 2025). The Court cannot conclude that Respondents have the unilateral authority to start treating Petitioner as being governed by § 1225(b) when they did not do so previously. *See id.; Martinez*, 792 F. Supp. 3d at 218–23. "That Petitioner is in asylum proceedings does not alter this analysis." *Mayamu K. v. Bondi*, No. 25-3035 (JWB/LIB), 2025 WL 3641819, at *4 (D. Minn. Oct. 20, 2025); *see also Maldonado v. Olson,* 795 F. Supp. 3d 1134, 1151 (D. Minn. 2025) (agreeing that asylum seeker residing in the United States was "already present in the United States" and not "seeking admission into the country," and thus subject to § 1226(a)'s discretionary framework.) The Court will presume that Petitioner is governed by § 1226 and §1229a as an "alien[] already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289.

   B.  *Petitioner Must Be Given an Individualized Bond Hearing Before an Immigration Judge.*

The remaining question is what relief to order. Petitioner asks the Court to order immediate release or, at minimum, an individualized bond hearing before an Immigration Judge pursuant to § 1226(a) within seven days. The Court has the authority to do either one. *Demore*, 538 U.S. at 517 (recognizing that § 1226(e) "contains no explicit provision barring habeas review"). Petitioner argues that immediate release is appropriate based on Respondents' failure to establish that they had an arrest warrant at the time of Petitioner's arrest and/or that they complied with governing requirements for warrantless arrest.

This argument highlights an ambiguity in immigration laws and regulations regarding warrantless arrest. On one hand, § 1226(a) states that the Attorney General must issue a warrant before an alien may be arrested and detained. Moreover, 8 C.F.R. § 236.1(b)(1) states that an arrest warrant may be issued "[a]t the time of issuance of the notice to appear, or at any time thereafter." Read together, these provisions appear to require the issuance of an arrest warrant (i) before the arrest itself, but (ii) not until a notice to appear has been filed.

On the other hand, 8 U.S.C. § 1357(a) establishes that an immigration officer has the power to act without a warrant in some circumstances, including, as relevant here, the power to:

> arrest any alien who in his presence or view is entering or attempting to enter the United States . . . or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States . . . .

*Id.* § 1357(a)(2). In turn, 8 C.F.R. § 287.3(a) states that the "examination" referenced in § 1357(a)(2) shall be made "by an officer other than the arresting officer. If no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay, the arresting officer, if the conduct of such examination is a part of the duties assigned to him or her, may examine the alien." Section 287.3(d) then states that except in extraordinary circumstances or where voluntary departure has been granted, a determination must be made within forty-eight hours "whether the alien will be continued in custody or released on bond and recognizance and whether a notice to appear and warrant of arrest as prescribed in 8 CFR parts 236 and 239 will be issued."

Parsing the language, these provisions give an immigration officer the authority to make a warrantless arrest if: (i) the officer has reason to believe the alien is in the United States without lawful status; (ii) the officer has reason to believe the alien is likely to escape before a warrant can be obtained for his arrest; (iii) the alien is taken without unnecessary delay for examination before a qualified immigration officer; (iv) the examining officer is different than the arresting officer unless no such person is "readily available;" and (v) a determination is made within forty-eight hours whether a notice to appear and arrest warrant will be issued. Petitioner argues that the second, third, and fourth conditions are not satisfied here. (ECF 8, p. 8.)

The record is too muddled to allow the Court to agree. Petitioner alleges that he has lawful work authorization, which, if true, would mean he has been in regular contact with immigration officials. Respondents, by contrast, appear to be asserting that a notice to appear was not issued for Petitioner until March 2023, months after he was originally encountered at the border. They also assert that he did not comply with requirements to schedule an appointment for providing biometrics or a DNA sample. If true, these allegations suggest that he has not been in contact with

immigration officials since his original encounter at the border, nor has he complied with reporting obligations. This, in turn, would be enough to give the officer "reason to believe the alien is likely to escape before a warrant can be obtained for his arrest" in satisfaction of the second condition for warrantless arrest.

From there, although the record is light on details, arrest records show that Petitioner was "provided a copy of the National Detainee Handbook" and "advised of the National Detainee Locator System." (ECF 7-2, p. 3.) The records further state that he "claims fear returning to his country of origin." (Id.) The forms also indicate that there was a different officer (Hubbard) and examining officer (Masich); a separate officer (Solis-Betty) signed the arrest warrant. (ECF 7-2, p. 1; ECF 7-3.) This information is enough to indicate that Petitioner was examined by either a "qualified immigration officer" or the arresting officer because no examining officer was "readily available." For this reason, and because immigration officials promptly obtained an arrest warrant, the Court must conclude that Petitioner has not met his burden of proving non-compliance with 8 C.F.R. § 287.3.

This does not mean that ongoing detention is appropriate. In past cases, the Court has ordered immediate release when a petitioner who was on bond during a pending removal proceeding was arrested despite the absence of any "changed circumstances" that might justify revocation, such as a new criminal arrest. Again, however, the muddled state of the record is a problem here. The Court simply cannot tell if this is a situation where Petitioner has already been released under § 1226(a) in connection with his removal proceeding and thereafter remained in good faith compliance with all immigration reporting requirements, or if he "dropped off the radar" and out of sight of immigration officials after the issuance of the Notice to Appear. If the former, his arrest was needless; if the latter, his arrest was proper. Either way, the Court believes the better exercise of discretion is to require a bond hearing within seven days before an Immigration Judge, who hopefully will be in a better position to flesh out whether Petitioner has ever been released on bond pursuant to § 1226(a) and, if so, whether he has complied with the conditions of that bond.

If the answer to both questions is "yes," the Immigration Judge should follow the long-standing practice of the Board of Immigration Appeals by allowing Petitioner to remain on bond, as revocation under § 1226(b) is permitted only if there has been a change in circumstances. *See, e.g., Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) ("In *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981), the BIA recognized that 'where a previous bond

determination has been made by an immigration judge, no change should be made … absent a change of circumstance."). Indeed, many lower courts have held that the due process clause prohibits the Attorney General from "summarily revok[ing]" an alien's bond in the absence of changed circumstances. *See, e.g., Iza v. Arnott*, No. 6:25-CV-3392-MDH, 2026 WL 67152, at *3–4 (W.D. Mo. Jan. 8, 2026); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *Kerry-Juma v. Noem*, No. CV SAG-25-04000, 2025 WL 3537525, at *2 (D. Md. Dec. 10, 2025); *Bermeo Sicha v. Bernal*, No. 1:25-CV-00418-SDN, 2025 WL 2494530, at *6 (D. Me. Aug. 29, 2025), *appeal docketed*, No. 25-2062 (1st Cir. Nov. 3, 2025). By contrast, if Petitioner has not complied with reporting requirements or other factors exist that raise concerns under the relevant criteria, the Immigration Judge might decide to order detention.

## V.   CONCLUSION.

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's Verified Petition for Writ of Habeas Corpus (ECF 1) is GRANTED IN PART and DENIED IN PART. Within seven days, Respondents must provide Petitioner with an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a). The Immigration Judge must decide the issue of bond or detention on the merits and may not conclude that jurisdiction to order bond does not exist.

2. Within fourteen days, one or both Parties must file a notice confirming that Petitioner has been granted the individualized bond hearing required by this Order. The notice also should state the outcome of the hearing.

**IT IS SO ORDERED.**

Dated: March 20, 2026.

_____
Stephen H. Locher
UNITED STATES DISTRICT JUDGE